Filed 7/29/25  In re D.D. CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re D.D. Jr., et al., Persons Coming Under the Juvenile Court Law. | |
| ALAMEDA COUNTY SOCIAL SERVICES AGENCY,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>E.M.,<br><br>        Defendant and Appellant. | A170962<br><br>(Alameda County Super. Ct. Nos. JD-037403-01, JD-037404-01, JD-037405-01, JD-037406-01, JD-037407-01) |

E.M. (Mother) appeals from jurisdictional and dispositional orders regarding her five children.  Mother contends (1) the juvenile court exceeded its authority by allowing amendment of the petition to conform to proof, (2) the court abused its discretion in denying Mother's counsel's request to continue the hearing on jurisdiction, (3) the matter should be remanded for the court to clarify which grounds for jurisdiction it found, and (4) the court's reasonable efforts finding must be reversed because reasonable efforts and services were not provided prior to the hearing on disposition.

We affirm.

1

**FACTS AND PROCEDURAL HISTORY**

Mother's children are D.D. Jr. (born in 2006), M.D. (born in 2009), O.D. (born in 2013), M.G (born in 2016), and M.G. Jr. (born in 2018) (collectively Minors). D.D. Sr. is the presumed father of the three eldest children, and M.G. Sr., who is deceased, is the alleged father of the two youngest children.

*Dependency Petition*

On April 4, 2024, the Alameda County Social Services Agency (Agency) filed a dependency petition on behalf of Minors, alleging they came within the jurisdiction of the juvenile court under Welfare and Institutions Code,[1] section 300, subdivisions (b) (section 300(b)), (g), and (j).

Under "FAILURE TO PROTECT § 300(b)," the Agency alleged Mother "has a history of utilizing excessive physical discipline and parenting practices with her children, which places them at serious risk of physical harm or neglect," to wit:

(A) Mother "has repeatedly kicked the minors, [D.D. Jr., 17 years old] and [M.D., 14 years old], out of the family's shared residence and prohibited them from returning home as a form of discipline, depriving the minors of support";

(B) she "has physically assaulted her children, punching, and kicking them at various parts of their body as a form of discipline";

(C) she "has approached the minor [D.D. Jr.] with a taser, verbally threatening him and holding it near his person";

(D) she "has struck the minors, [O.D.] (Age 10) and [M.G.] (Age 7), with various items such as sticks, belts, and a household item referred to by the children as 'the crucifer' for discipline purposes"; and

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

(E) on or around March 31, she "without provocation, pushed the minor, [M.G.], onto the concrete sidewalk, causing M.G. to scrape her knee, and cause bleeding/scabbing."  (These allegations were designated B-1 A. through E.)

It was further alleged that on April 2, Mother sprayed pepper spray in the faces of the two youngest children, M.G. Jr. (5 years old) and M.G., "kicked [M.G.] in the spine while she was laying on the ground," and struck O.D. "with a stick on his elbow causing bleeding and a noticeable wound"; M.G. fled, and when she returned, Mother "refused to allow her into the home and did not seek medical attention for the minors."  (Allegation B-2.)  On April 1, Mother was alleged to have dragged M.G., "struck her twice on the head with a large nail," and struck M.G. on her hand and back, resulting in "the minor receiving a lump on the back of her head, bruises on her back, and experiencing dizziness and soreness at the points of contact."  (Allegation B-3.)

*Detention Report and Detention Hearing*

On April 5, 2024, the Agency filed a detention report, and the juvenile court held a hearing on detention.

The Agency reported that, on April 2, Minors were delivered into protective custody by the Oakland Police Department, and the same day, Mother was arrested and charged with infliction of injury upon a child, willful cruelty to a child, and assault with a caustic chemical.  It was reported that Mother was incarcerated in county jail, and the whereabouts of alleged father D.D. Sr. were unknown.  A child welfare worker spoke with Minors on April 2, and their statements supported the factual allegations in the

3

petition.[2] A medical social worker at UCSF Benioff Children's Hospital confirmed that M.G. and M.G. Jr. were pepper sprayed, and she noted additional injuries to O.D.'s elbow and bruising on M.G.'s back.[3]

At the detention hearing, Mother was not present, and her counsel submitted on the issue of detention. The juvenile court found the initial removal of Minors from the home was necessary, and "there's no reasonable

---

[2] According to the detention report, M.G. Jr. told the child welfare worker that Mother sprayed him with pepper spray in the eyes and mouth, and he described the incident as " 'painful.' " The welfare worker observed swelling and irritation on M.G. Jr.'s face.

M.G. told the welfare worker she awoke that morning (April 2) to Mother " 'screaming' at" M.G. Jr.; M.G. came out of her bedroom, and Mother said, " 'I hate you' " and pepper sprayed her in the face; M.G. fell to the floor, and Mother kicked her in the spine. M.G. reported that she fled home; later, when she tried to return home, Mother locked her out, and the police were called. M.G. said the previous day, Mother locked her siblings out of the home. Mother grabbed M.G. by the hair and dragged her to a bedroom, forcing her face into a pillow. Mother hit M.G. with a large nail referred to as " 'the crucifer.' " M.G. reported that two days earlier, Mother pushed her to the ground outside. The welfare worker observed a bump on M.G.'s head and scratches and scabbing on her knee. M.G. said Mother hits her with a broom " 'very often,' " and she "reported not feeling safe at home because [Mother] 'hits us a lot.' " The welfare worker met with O.D. but "was unable to conduct an interview with the minor, due to his unwillingness to engage."

M.D. told the social worker Mother "typically yells at her," but she also recalled sustaining a bruise from Mother's use of a belt to discipline her, and Mother had kicked her out of the home at least three times in the past. M.D. expressed concern for her younger siblings. D.D. Jr. reported that Mother used physical discipline such as punching with a closed fist, although she had not disciplined him in that manner recently. In the past, Mother threatened D.D. Jr. with a taser, and she would kick him out of the home as a form of discipline, forcing him to reside with friends temporarily.

[3] O.D. would not consent to a torso examination, and the medical social worker was concerned about additional injuries and suggested O.D. be seen by a primary care physician for further examination.

4

services available that would prevent the need for further detention." The court ordered the Agency to arrange for supervised third-party visitation "consistent with the minors' wellbeing."

*Jurisdiction/Disposition Report*

On May 10, the Agency filed a 55-page jurisdiction/disposition report recommending that the petition be found true, that Minors remain in out-of-home care, and that Mother and presumed father D.D. Sr. receive family reunification services.

The report documented social worker Muhammad's meeting with Mother on April 22, 2024, during which the social worker asked Mother about each factual allegation in the petition. Mother denied she ever kicked Minors out of the house, and she "stated, 'Regarding the excessive discipline, I have not ever kicked my children. I am from Oakland . . . I am more so in there [*sic*] face.' " She denied punching her children as a form of discipline. She "described herself as 'a big woman' with a 'loud voice' " and "described her parenting style as a 'Don't disrespect me' approach."

Mother acknowledged she had " 'a stun gun' " but said the incident D.D. Jr. reported " 'happened years ago.' " Mother stated she had never heard of an object used for discipline called a "crucifer." She said, "I have never brutally . . . I have whooped like spanked, I have never left a mark, nobody has ever gotten hurt." Asked if she ever used a weapon to discipline Minors, Mother responded, " 'No, but I have threatened it. My hands are constantly swollen. I have rheumatoid arthritis and lupus. I can't even catch.' " Regarding the allegation that she pushed M.G. on the sidewalk around March 31, Mother said her three youngest children " 'were outside crying, but I was not with them.' "

5

Asked about the alleged events of April 2, Mother said there was pepper spray in her make-up bag, she guessed M.G. picked it up, and the incident " 'was a blur because I was just dealing with the dog.' " She said, " "I never said they could not come back into the house, I was arrested. The door was open.' " Mother denied striking O.D. with a stick or kicking M.G. Regarding the allegation she hit M.G. with a nail, Mother "stated, 'I did not do that. That is my statement, end of story. That is preposterous.' "

All five Minors participated in CALICO forensic interviews and also spoke with the social worker; their statements were summarized in the report. Seventeen-year-old D.D. Jr. reported that Mother kicked him out of the house four or five months ago; on April 1, Mother grabbed M.D. by her hair and slammed her against the gate door; on another occasion, Mother " 'attacked' " O.D., " 'kicking and punching him on the ground' "; and Mother referred to a big rusty nail as " 'The Crucifier.' " He said there were " 'just days that [Mother] would wake up and be angry,' " and " 'She will attack us sometimes.' " Fourteen-year-old M.D. reported that Mother kicked her out of the home " 'a few times' " and usually let her back " 'after a day or two' "; Mother " 'has pushed [M.D.'s] head into the wall violently' "; and she hit O.D. with a broom on April 2.

About the events of April 2, 10-year-old O.D. "stated, '[M.G.] got hit a lot of times and pepper sprayed, same with [M.G. Jr.]. And I just got hit, my mom tried to pepper spray me but I ran.' " He said Mother hit him about 15 times " 'with the broom and then it broke,' "[4] and Mother hit and kicked M.G. Jr., who " 'was on the floor crying.' " He said the broom was made of metal. O.D. reported sustaining bruises in the past on his ankle, arm, knee, back,

---

[4] M.G. also reported that Mother hit O.D. with a broom, and " 'the broom broke because my mom was hitting him too hard.' "

and stomach.  Seven-year-old M.G. reported that Mother " 'sprayed me in the eyes, I fell on the ground and then she kicked me.' "  M.G. said she " 'got hit with a belt like ten times,' " but she could not remember when these incidents occurred.  M.G. described the "Crucifier" as an old, rusty nail, demonstrating an object about 12-15 inches long.[5]  She said Mother hit her with " '[the] nail thing.  The crucifier,' " and she did not know why she was being hit.  Five-year-old M.G. Jr. reported that Mother " 'sprayed pepper spray in my eyes,' " and " 'it hurt so bad it hurt my skin.' "  He said, " 'While I was screaming in pain, she was kicking me and punching me and slapping me,' " and it felt " 'like she hates me.' "

Oakland Police Department incident reports documenting the April 2 pepper spray incident and Mother's arrest were attached to the jurisdiction/disposition report.

D.D. Jr., M.D., and M.G. Jr. "expressed that they [we]re not comfortable visiting with the mother."  O.D. and M.G. wanted supervised visitation, but it was reported that Mother "has not had in-person visitation with the minors, as the Agency has been unable to facilitate the scheduling, transportation, and supervision needed for the family."  Mother had "consistently contacted the minors at their respective cellphones numbers and ha[d] partnered with the current caregiver . . . to communicate with the minors."  Minors were in the care of a paternal aunt.

The Agency remained concerned that Mother "will continue to utilize excessive physical discipline and parenting practices with her children, which places them at serious risk of physical harm."

---

[5] In describing the "Crucifier," D.D. Jr. also indicated the object was about 12 inches long and 1.5 inches wide.  M.D. described Mother hitting M.G. with a " 'super large' " nail.

*Jurisdiction Hearings on May 10 and June 5*

At the scheduled hearing on May 10, Mother was not present. Her counsel requested a continuance because Mother was not available (she was reportedly not feeling well) and to give counsel and Mother an opportunity to review the extensive jurisdiction/disposition report that was filed that day. There was no objection, and the juvenile court set a jurisdiction hearing for June 5.

At the June 5 hearing, Mother was present[6] and requested a contested hearing on jurisdiction. The court scheduled the contested hearing to start on June 13 and stated on the record, "Parties are ordered to participate, starting June 13 at 9:00 a.m."

Mother's counsel told the court Mother had not had visits with her children, and she would like them as soon as possible. County Counsel responded, "The Agency was under the impression there was a CPO [criminal protective order] in effect as of the last hearing. This is the first I think we're aware that there was no CPO." The juvenile court then did "a quick search" "in the case management system" and reported, "No criminal case came up." The court stated, "[I]n the absence of [a CPO], then the Court's order is for supervised visitation." Minors' attorney told the court that many of Minors "do not want to engage in visits."

*Contested Hearing on Jurisdiction and Disposition*

At the contested hearing on jurisdiction and disposition on June 13, Mother was not present, although her counsel told the court at the outset that he "expected her to be here."

---

[6] This was the fourth hearing in this dependency proceeding and the first and only hearing Mother attended through jurisdiction and disposition.

8

<u>Mother's Request for a Continuance</u>

Mother's counsel asked for a continuance, so he could "have more of an opportunity to discuss the case" with Mother. He also told the court he had just "received a document this morning where there's going to be a motion to amend . . . the pleadings to proof, to add a new . . . allegation to the petition" and that was "another basis for [his] request to continue the case."

The juvenile court denied Mother's request to continue the matter. It noted Mother had not appeared at the detention hearing or the initial jurisdiction/disposition hearing and stated, "[Mother]'s well aware that the matter has been pending. It was set for a contested hearing on June 5th. And she did appear. And the Court accommodated and set a full-on evidentiary hearing to start today, and she has not appeared . . . without excuse."

<u>The Agency's Proposed Amendment</u>

Turning to the Agency's proposed amendment to the petition, the court said it might not allow amendment "at this late juncture."

County counsel responded that the Agency was providing the court and all parties the exact language of an amended petition the Agency intended to file "to conform to proof at the end of the trial." She explained that Minors' attorney had pointed out the facts already alleged under section 300(b) (failure "to adequately supervise or protect") also supported jurisdiction under section 300, subdivision (a) (section 300(a); "serious physical harm inflicted nonaccidentally"). County counsel told the court, "There are no new facts being introduced in these [proposed amended] allegations that are not already contained in the reports."

The court asked whether the Agency was "proposing to add an (a) count with the same allegation language as the [section 300](b) count," with "[n]o

9

change whatsoever." County counsel responded, "There are some details that have been added that are already contained in the reports. Though, your Honor, none of it is a gotcha, surprise, new facts to be supported by new sources of evidence that the parties haven't received."[7]

Evidence Presented and Arguments

County counsel then presented the Agency's evidence. She introduced the detention and jurisdiction/disposition reports, asked the court to take judicial notice of prior findings and orders in the case, and called the social worker assigned to the case, Muhammad, who authored both reports. The social worker had read the proposed amended petition, and he agreed it was

---

[7] The proposed amended petition alleged, under "SERIOUS PHYSICAL HARM § 300(a)," supporting facts that varied from the factual allegations supporting section 300(b) in the original petition in the following ways.

The first sentence alleging Mother's "history of utilizing excessive physical discipline . . ." (original language in allegation B-1) replaced the phrase, "which places them at serious risk of physical harm or neglect" with the phrase, "which has resulted in her children suffering serious physical harm, inflicted nonaccidentally."

The allegations regarding kicking the two oldest children out of the house (original in allegation B-1 A.) and threatening D.D. Jr. with a taser (original in allegation B-1 C.) were omitted.

The allegation that Mother "physically assaulted her children . . ." (original at allegation B-1 B.) was amended to add to the end of sentence, "causing bruises."

The allegation that Mother "has struck the minors, [O.D.] (Age 10) and [M.G.] (Age 7), with various items" (original in allegation B-1 D.) was amended to add "brooms" to the list of items Mother used (which originally included "sticks, belts, and a household item referred to by the children as 'the crucifer' ") and to add, "causing bruises."

The allegations regarding the events of April 2 (original in allegation B-2) were amended to replace the word "stick" with "metal broom."

10

true and consistent with his investigation. He recommended supervised visits for the three older children and, for the two youngest children, therapeutic visitation if they were not opposed to it.

Mother's counsel presented no evidence.

County counsel asked to "conform the filed petition to proof" to include allegations under section 300(a), "as provided in writing to all counsel and the Court today," arguing Mother's conduct met the legal definition of serious physical abuse under that subdivision.

Minors' counsel agreed with the Agency's recommendations, and assumed father D.D. Sr. submitted on the jurisdiction/disposition report.

In closing argument, Mother's counsel told the court he did not believe "the actions described in the petition, the initial petition, the amended petition rise to the level of a subsection (a) allegation as to" Mother. He pointed out there was no evidence criminal charges were filed against Mother and argued, if "the alleged injuries . . . [had] been as severe as they were . . . described, then there would definitely have been charges that were filed." Mother's counsel "object[ed] to the Agency amending the petition or conforming it to proof" because he "d[id]n't think there's an (a) allegation here."

*Juvenile Court Findings and Orders*

After hearing the evidence and arguments, the court announced it found the allegations true, observing there was "an extensive pattern of abuse by a parent who very clearly is out of control in terms of anger management."

Addressing the request to amend, the court permitted the Agency to file an amended petition explaining, "I have reviewed what is proposed to be allegations conformed to proof, and the Court is in agreement with

11

conforming along those lines. There's ample evidence in support of those allegations in the report. The Court agrees with Counsel's position about the (a) allegation, the evidence being sufficient. I agree that that is also true."

The court continued, "What the court is being asked to conform is not anything new or unexpected. And so I have no issues with the request as made today under the circumstances of this case."

The court declared Minors dependents of the court. It stated there was "clear and convincing evidence that they must be removed from the physical custody of parents" and adopted the recommended findings and orders in the jurisdiction/disposition report as amended.

## DISCUSSION

A.  *Allowing Amendment of the Petition to Add Section 300(a) Allegation*

Mother first contends the juvenile court "exceeded the permissible scope of its authority by adding a new basis for jurisdiction, as a matter of purportedly 'conforming' the petition according to proof." This claim of error applies to the court's jurisdictional finding based on the amended allegation under section 300(a) only.

Respondent points out that we need not consider Mother's first appellate claim. This is because, when there are multiple jurisdictional findings against a parent, "the validity of one finding may render moot the parent's attempt to challenge the others." (*In re D.P.* (2023) 14 Cal.5th 266, 284 (*D.P*).)

Here, Mother does not challenge the juvenile court's true finding as to the facts alleged in support of jurisdiction under section 300(b).[8] This means

---

[8] The court also found jurisdiction under section 300, subdivisions (g) and (j). As we discuss in part D. below, Mother does question these jurisdictional findings, although we find her argument without merit.

Mother does not dispute the court's findings under section 300(b) that she "has a history of utilizing excessive physical discipline and parenting practices with her children"; she repeatedly kicked D.D. Jr. and M.D. out of their home, "depriving the minors of support"; she "has physically assaulted her children, punching, and kicking them at various parts of their body as a form of discipline"; she threatened D.D. Jr. with a taser; she "has struck the minors, [O.D.] (Age 10) and [M.G.] (Age 7), with various items such as sticks, belts, and a household item referred to by the children as 'the crucifer' for discipline purposes"; and she "without provocation, pushed the minor, [M.G.], onto the concrete sidewalk, causing M.G. to scrape her knee, and cause bleeding/scabbing." Nor does Mother dispute the findings that, on April 2, 2024, she pepper sprayed M.G. Jr. and M.G., "kicked [M.G.] in the spine while she was laying on the ground," struck O.D. "with a stick on his elbow causing bleeding and a noticeable wound," and "refused to allow [M.G.] into the home and did not seek medical attention for the minors"; and, on April 1, she dragged M.G., "struck her twice on the head with a large nail," and struck M.G. on her hand and back, resulting in "the minor receiving a lump on the back of her head, bruises on her back, and experiencing dizziness and soreness at the points of contact."

In reply, Mother argues we are required to consider her challenge to the court's section 300(a) finding, citing *D.P.*, *supra*, 14 Cal.5th at page 283, in which our high court held, "[W]here a jurisdictional finding 'serves as the basis for dispositional orders that are also challenged on appeal' [citation], the appeal is not moot." We disagree with the premise of her argument, however. The section 300(a) jurisdictional finding was not the sole or necessary basis of the dispositional orders. To the contrary, the facts supporting jurisdiction under section 300(a) are nothing more than a subset

13

of the facts supporting jurisdiction under section 300(b).  Thus, even if the section 300(a) jurisdictional findings were reversed, the factual basis for the dispositional orders would remain the same.  Under this circumstance, we conclude Mother's appellate claim is moot.

Mother next asserts we should consider her claim under "[p]rinciples of fairness and due process."  But we discern no unfairness here.  As respondent argues, "This is not a case where the parent was deprived of due process[;] rather Mother had notice and an opportunity to be heard as to the specific facts of the allegations."

In sum, we decline to consider Mother's challenge to the juvenile court's finding under section 300(a) because, "[a]s long as there is one unassailable jurisdictional finding, it is immaterial that another might be inappropriate." (*In re Ashley B.* (2011) 202 Cal.App.4th 968, 979.)

B.  *Denial Of Mother's Request for a Continuance*

Mother argues the juvenile court abused its discretion in denying her counsel's request for a continuance.  We find no abuse of discretion.

Section 352, subdivision (b), provides in relevant part, "Notwithstanding any other law, if a minor has been removed from the parents' or guardians' custody, a continuance shall not be granted that would result in the dispositional hearing, held pursuant to Section 361, being completed longer than 60 days, or 30 days in the case of an Indian child, after the hearing at which the minor was ordered removed or detained, *unless the court finds that there are exceptional circumstances requiring a continuance.*" (Italics added.)

A "court's denial of a request for a continuance will not be overturned on appeal absent an abuse of discretion."  (*In re Elijah V.* (2005) 127 Cal.App.4th 576, 585.)

14

Here, Mother did not appear at the jurisdictional hearing after requesting the contested hearing and receiving notice of the date. Her counsel asked for a continuance. He told the court: "I had a conversation with my client earlier this morning. We were discussing the allegations of the case. We did not finish. I expected her to be here at 9:00. She's not here.

"And I'm requesting that the Court continue the case until the next available date, which is the 18th, so that I can have more of an opportunity to discuss the case with my client, Judge. [¶] I understand that we were here last week when you set it for contested hearing on basically a one-week time period. And I know that the case has been going on for a number of months. But I'm not in a position at this point to continue with this case.

"I also received a document this morning where there's going to be a motion to amend the case, amend the pleadings to proof, to add a new—an (a) allegation to the petition. I've just received that this morning. [¶] Obviously not in agreement with that. So I make that as another basis for my request to continue the case. I just basically need more time to discuss it with my client, Judge."

The court responded, "I'm not hearing good cause in any of the comments that you offered today. Needing more time to speak to your client, who ultimately didn't appear for trial, I don't believe that constitutes good cause." The court observed that Mother had not appeared at previous hearings and she had now failed to appear at the scheduled contested hearing "without excuse."

Mother's failure to attend the scheduled contested hearing and her counsel's desire for more time to discuss the case with her are not exceptional circumstances. Nor do we believe the Agency's indication that it intended to file an amended petition to conform to proof was an exceptional circumstance

15

that required a continuance. As we have observed, this is not a case where a parent was deprived of due process. The factual allegations were known to Mother since the original petition was filed, and the jurisdiction/disposition report was filed a month before the contested hearing. The juvenile court did not abuse its discretion in denying counsel's request for a continuance.

C.  *Jurisdictional Findings under Section 300, subdivisions (g) and (j)*

Next, Mother seeks "[r]emand to the juvenile court or modification of the minute orders" to reflect that the court did not sustain jurisdiction under section 300, subdivisions (g) and (j). There is no basis for the request, as the juvenile court clearly did sustain jurisdiction under section 300, subdivisions (g) and (j).

In the original petition and the operative amended petition, the Agency alleged jurisdiction under section 300, subdivision (g) and (j).[9]

At the jurisdictional hearing, the juvenile court stated, "The Court will find today that notice has been given as required by law. *The allegations of the petition are true.* And the Court will conform them as proposed by County Counsel today. The children are described by Section 300, subdivisions (a)

---

[9] In the operative petition, under "NO PROVISION FOR SUPPORT § 300(g)," it was alleged that alleged father, M.G. Sr. was deceased and "presumed father, [D.D. Sr.]'s ability to care for the minors, [D.D. Jr.], [M.D.], and [O.D.], is undetermined. Mr. [D.] has had a prolonged absence during the minors' upbringing and he currently lacks relationships/engagement with the children."

Under "ABUSE OF SIBLING § 300(j)," it was alleged, "[D.D. Jr.] (Age 17) and [M.D.] (Age 14) are at substantial risk of abuse or neglect due to being subjected to the same parenting practices as the [*sic*] their respective half-siblings, [O.D.] [*sic*], [M.G.] & [M.G. Jr.], who have been physically abused while in their mother[']s care."

16

and (b). [¶] So Madam Clerk, item 5 is modified to reflect (a) as well as (b)."[10] (Italics added.) The court further announced, "And the remaining recommended findings and orders in items 1 through 29 of the May 10 report are adopted by the Court."

The minute order provides, among other things, "*The allegations of the petition as amended are true*. Agency to file amended petition. The minor is described by WIC section 300, subdivisions (a) and (b)." (Italics added.) "The court adopts the recommendations on pages 48 through 51 of the social worker's report filed 5/10/24 and are incorporated as part of this minute order as amended on the record."

On this record, Mother asserts it is unclear what jurisdictional grounds the court sustained and suggests the juvenile court found the allegations pertaining to section 300, subdivisions (g) and (j), *not* true. But the record is not unclear. The juvenile court found all the allegations, including those under section 300, subdivisions (g) and (j), true. There is no ambiguity in the court's pronouncements or the minute order. No remand or modification is warranted.

D.      *Reasonable Efforts Finding*

Finally, Mother claims the finding of reasonable efforts by the Agency must be reversed on the ground "reasonable efforts and services were not

---

[10] Item 5 of the recommendations in the jurisdiction/disposition report provided that Minors are described by section 300 subdivisions (b) and (g), and D.D. Jr., M.D. and O.D. are described in section 300, subdivision (j). Although the parties do not raise the issue, we note that the petition does not refer to O.D. in connection with section 300, subdivision (j). This is error, but it is harmless because, as we have discussed, there are multiple other grounds for jurisdiction over O.D.

17

provided to the family and mother prior to the disposition hearing."  We are not persuaded.

Section 361, subdivision (c)(1), provides that a juvenile court may not remove a child from a parent's custody unless it finds by clear and convincing evidence that, among other things, "there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody."  Section 361, subdivision (e), provides, "The court shall make a determination as to whether reasonable efforts were made to prevent or to eliminate the need for removal of the minor from their home . . . ."

At the jurisdictional hearing in the case, the juvenile court found, "Reasonable efforts were made to prevent or eliminate the need for removal, and the placement is necessary and appropriate."

Respondent identifies the Agency's reasonable efforts described in the jurisdiction/disposition report.  On April 3, 2024, an emergency child and family team meeting was held that included four social workers and four relatives (paternal cousins and the maternal grandmother).  On April 4, M.G. Jr., M.G., and O.D. participated in CALICO forensic interviews.  On April 9, D.D. Jr. and M.D. participated in CALICO forensic interviews.  On April 22, social worker Muhammad held a face-to-face meeting with Mother, during which she minimized her conduct.[11]  At the jurisdictional hearing,

---

[11] Mother dismissed the taser incident by saying it " 'happened years ago' " and, " 'I think that [D.D.] Junior is having a little [a]nxiety.' "  She acknowledged she " 'whooped' " her children but said she " 'never left a mark.' "  She said, "I am a big woman . . . I can yell.  It does not mean abuse, [i]t means I am intimidating you."  She denied using a weapon to discipline her children but admitted threatening her children with a weapon.  She appeared to minimize the pepper spray incident, saying, " 'You know it is pepper in water?  I know it sounds like I am dumbing it down.' "

18

Muhammad testified he sought referrals for therapeutic visitation, individual therapy and family counseling, and he noted that O.D. was receiving counseling support at his school. He had also supervised one visit between O.D. and Mother.

We agree with respondent that there was sufficient evidence of the Agency's efforts to prevent or eliminate the need for removal, and removal was necessary given the extent of the documented physical abuse and Mother's failure to acknowledge the abuse.

Mother argues the Agency failed to provide reasonable services because she was not provided adequate supervised visitation. But she relies on cases involving reasonable services at the *reunification* stage, not the disposition stage. (See *Michael G. v. Superior Court* (2023) 14 Cal.5th 609, 624 ["Dependency proceedings span up to four stages: jurisdiction, disposition, reunification, and permanency. . . . At the dispositional stage, the court decides if the child can be returned to, or must be removed from, a parent's custody. (Welf. & Inst. Code, §§ 315, 319.) During the reunification stage, qualifying parents are offered services to address the causes that led to the loss of custody"].) While there is no doubt that visitation is an important component of a reunification plan (*Serena M. v. Superior Court* (2020) 52 Cal.App.5th 659, 673), the question at this stage is whether the Agency made reasonable efforts "to prevent or to eliminate the need for removal of the minor from their home" (§ 361, subd. (e)). Sufficient evidence supports that finding even if more could have been done to provide Mother visits.

## DISPOSITION

The juvenile court's jurisdictional and dispositional orders are affirmed.

19

_____

Miller, J.

WE CONCUR:

_____

Richman, Acting P.J.

_____

Desautels, J.

A170962, *Alameda County Social Services Agency v. E.M.*